TUCKER ELLIS LLP
Steven E. Lauridsen - SBN 246364
steven.lauridsen@tuckerellis.com
David J. Steele - SBN 209797
david.steele@tuckerellis.com
Howard A. Kroll – SBN 100981
howard.kroll@tuckerellis.com
Dina Roumiantseva – SBN 300576
dina.roumiantseva@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Telephone:      213.430.3400
Facsimile:      213.430.3409

Attorneys for Plaintiff,
Coachella Music Festival, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| COACHELLA MUSIC FESTIVAL, LLC, | Case No. 2:24-cv-537 |
| Plaintiff, | **COMPLAINT FOR** |
| v. | **(1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114; (2) FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125; (3) FALSE ADVERTISING UNDER 15 U.S.C. § 1125; (4) VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 & 17500; (5) INDUCEMENT OF TRESPASS; (6) CONVERSION; AND (7) TRESPASS TO CHATTELS** |
| SAFETY SHOT, INC., | |
| Defendant. | |

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Plaintiff Coachella Music Festival, LLC, by and through its attorneys Tucker Ellis LLP, files its complaint against Defendant for injunctive relief and damages as follows, with Plaintiff alleging upon actual knowledge with respect to itself and its own acts and on information and belief as to all other matters.

## INTRODUCTION

1.    As a publicly traded beverage company watched its stock plummet by approximately 40% in a four-week period, it attempted to garner global exposure by issuing and circulating a bogus press release, which stated that the company would have a brand activation and presence at the Coachella Valley Music and Arts Festival (described in the press release as "where the top brands of the world engage with and support a thriving music and arts scene"); however, the beverage company has no sponsorship relationship, contract, or affiliation with the Festival, and despite repeated requests to delete the false press release and terminate the unauthorized promotion, the company failed to do so. As a result, Plaintiff has no choice but to bring this lawsuit against the beverage company in United States District Court for trademark infringement, unfair competition, and conversion, among other causes of action.

2.    Plaintiff's Coachella Valley Music and Arts Festival ("Coachella" or the "Festival") is one of the most critically acclaimed music and art festivals in the world, with multiple bands, artists, food vendors, and stages. Held annually,[1] Coachella is a world-famous multi-day music and art festival which attracts hundreds of thousands of attendees to Southern California each April. Since its inception in 1999, Coachella has become a cultural phenomenon, with performances by some of the most high-profile performers in the music industry. A wide range of Coachella-branded apparel and merchandise is sold and advertised at Coachella, on the Festival website, through the Coachella app, and on social media. Plaintiffs also offer a large variety of related goods and services in connection

---

[1] Coachella was not held in person in 2020 and 2021 due to the COVID-19 pandemic; however, a YouTube Original documentary, "Coachella: 20 Years in the Desert" debuted online on April 10, 2020 and has been viewed at over 6,793,000 times. Coachella returned in person in 2022.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

with Coachella, including a globally livestreamed webcast and subsequently posted video recordings, which are viewed by millions of people around the world.

3.      Despite having no association with Plaintiff or its Coachella festival, Defendant is intentionally trading on the goodwill of Plaintiff and the well-known COACHELLA trademarks and service marks by falsely claiming in a press release "to be [a] highlight of Coachella's opening weekend" and falsely asserting that Defendant would have a brand activation at the Festival, joining "other global beverage brands that have created activations at Coachella including Heineken, Patron, Don Julio, 818 Tequila, Aperol Spritz, and Evian," each of which is or has been a legitimate sponsor of the Coachella festival.[2] Defendant also falsely asserted that it would have "a giveaway for consumers to win a chance to attend this extraordinary event during Coachella's opening weekend."

4.      Essentially, Defendant has stolen a sponsorship from Plaintiff without paying for it and has even gone so far as to brag about its expected boost in sales "to take off as a global brand," including from this alleged "exposure at Coachella" where "people around the world will be introduced to" Defendant's product, all while knowing that its statements concerning any association with Plaintiff or its Coachella festival are patently false and misleading.[3]

5.      While making these patently false and misleading statements, Defendant also acknowledges that there are "significant risks and uncertainties affecting" its business plans.[4] Accordingly, Defendant has not only traded on the goodwill of Coachella, but it has also put Coachella's reputation at risk by causing the public to associate these "risks and uncertainties" with Plaintiff and its Coachella festival.

6.      Plaintiff made several requests for Defendant to retract the false statements

---

[2] *See* Exhibit 7 at 90.

[3] *Id.* at 91.

[4] *Id.*

and cancel its promotional event; however, Defendant has failed to delete the false statements or cancel the event, thus leaving Plaintiff no choice but to file this action to protect its COACHELLA trademarks and service marks from infringement and unfair competition and to protect the public from confusion, false association, and false advertising.

## THE PARTIES

7.     Plaintiff Coachella Music Festival, LLC is a Delaware limited liability company with its principal place of business in Los Angles, California.

8.     On information and belief, Defendant Safety Shot, Inc. is a Delaware corporation with its principal place of business in Jupiter, Florida.

## JURISDICTION AND VENUE

9.     This case is a civil action arising under the Lanham Act, 15 U.S.C. §§ 1114, 1125, *et seq.*, and California statutory and common law.

10.     This Court has subject matter jurisdiction over the federal claims in this complaint pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. §§ 1338(a)-(b) (any act of Congress relating to trademarks or unfair competition with substantial and related claim under trademark laws).

11.     This Court has supplemental jurisdiction over the claims arising under California law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because the asserted state law claims are substantially related to the claims arising under the Lanham Act such that they form part of the same case or controversy.

12.     This Court has personal jurisdiction over Defendant because (1) Defendant conducts business within California and this judicial district; (2) the causes of action asserted in this complaint arise out of Defendant's contacts with California and this judicial district; (3) Defendant has caused tortious injury to Plaintiff in California and in this judicial district; and (4) Defendant has undertaken acts of trademark and service mark infringement, false designation of origin, unfair competition, false advertising, conversion,

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

and trespass to chattels that were directed at California with knowledge that the brunt of injury would be felt by Plaintiff in California.

13. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is the subject of the action is situated in this judicial district.

## PLAINTIFF'S COACHELLA FESTIVAL, TRADEMARKS, AND SERVICE MARKS

14. Plaintiff owns and, with its partners, produces Coachella, one of the country's premier music and arts festivals. Printouts of several news stories about Coachella are attached to this Complaint as **Exhibit 1**. The caption from one photograph accompanying a story from CNN reads, "[a]n aerial view taken from a helicopter on Sunday shows how big the [2011] festival is." *Id*. at 40.

15. Held annually at the Empire Polo Club in the beautiful Southern California desert, Coachella is one of the most critically acclaimed music festivals in the world. The entire festival site, which includes the festival grounds, on-sight camping, parking and support operations, encompass over 800 acres.

16. Coachella was first held in October 1999 and drew some 25,000 attendees into the California desert near Palm Springs. Over the years,[5] both Coachella's attendance and its prominence have grown. Attendance to Coachella, aggregated over the multi-day event, now totals nearly 750,000 attendees per year.

17. Coachella showcases some of the most groundbreaking artists from all genres of music along with a substantial selection of art installations from all over the world. Coachella attracts some of the world's biggest mega-stars to perform. The list of artists who have performed includes AC/DC, Bad Bunny, Beyoncé, Beastie Boys, Bjork, BLACKPINK, Cardi B, Daft Punk, Dr. Dre & Snoop Dogg, Guns N' Roses, Harry Styles, Jane's Addiction, Jay-Z, Lady Gaga, Leonard Cohen, Madonna, Paul McCartney, Prince,

---

[5] Coachella was next held in April 2001 and has been held annually thereafter, except in 2020 and 2021, when the Festival was postponed due to the COVID-19 pandemic.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Radiohead, Red Hot Chili Peppers, The Cure, and The Weeknd, to list just a few.

Coachella is about more than just music. The Festival has camping facilities for some 15,000 attendees (complete with a karaoke lounge and a general store), on-site lodges, hotel packages, and an amazing selection of food and beverages from a wide range of restaurants. The Festival also features extensive art exhibits, including sculpture and interactive and immersive art. The music, the food, the art, and of course, the fellowship of other attendees, taken together, makes Coachella more than just a concert to attend—it truly is an experience.

18.   Coachella is widely recognized for its fashion and has developed a reputation as an unofficial kick-off to summer styles, attracting sponsorships from recognized and esteemed international brands such as Hennes & Mauritz, Ray-Ban, BMW, Adidas, Swarovski, and more.

19.   Numerous approved beverage companies such as Absolut, Heineken, Aperol Spritz, White Claw, and Coca-Cola sponsor Coachella.

20.   Plaintiff is very selective concerning with whom it will enter into a sponsorship arrangement, and Coachella sponsorships are property worth substantial sums due to the exposure they garner.

21.   Coachella branded merchandise available to Festival attendees includes a wide range of apparel for men, women, and children.

22.   Plaintiff owns and operates Coachella's website, available at www.coachella.com. This website has received over 20 million page views in 2019, hosting nearly 8.5 million users over nearly 12 million sessions. Between January 1, 2022 and May 1, 2022, the www.coachella.com website received over 15 million page views and hosted more than 6 million users in over 10 million sessions. Screen captures of Plaintiff's website, available at www.coachella.com, are attached to this Complaint as **Exhibit 2**.

23.   Plaintiff also produces a mobile app for Coachella for use on iPhone / iPad and Android devices. Screen captures of Plaintiff's app from iTunes and Google are

attached to this Complaint as **Exhibit 3**.

24. Plaintiff extensively promotes Coachella through a variety of media, including via the Internet on its website, available at www.coachella.com, and on numerous social media sites including YouTube, Facebook, Instagram, Pinterest, and Twitter. Screen captures of Coachella's Facebook, Twitter, and Instagram accounts are attached to this Complaint as **Exhibit 4**. As can be seen from Exhibit 4, Coachella's YouTube account has over 3.25 million subscribers; its Facebook account has over 2.4 million followers; its Twitter account has over 1 million followers; and its Instagram account has over 2.8 million followers.

25. Plaintiff and its affiliates have invested substantial sums in media and related content to promote Coachella.

26. An Internet search using the Google search engine for the word "Coachella" provides over 194 million hits. *See* Exhibit 4 at 71. A cursory review of the results shows nearly every hit in the first four pages of results was related to Plaintiff's festival; and the first search result was to Plaintiff's www.coachella.com website.

27. Tracked online media impressions (advertisements) for the Coachella festival from April 8, 2022 to April 29, 2022 exceeded 111 billion impressions.

28. In 2023, over 500 credentialed journalists, from print media, radio, television, and the Internet reported live from Coachella. The journalists represented media outlets such as Time, Billboard, and the BBC.

29. Plaintiff owns the exclusive trademark and service mark rights to the distinctive COACHELLA trademark and service mark, having used the mark in connection with the Festival and related goods and services since the first Coachella in 1999.

30. Similarly, Plaintiff owns the exclusive trademark and service mark rights to the distinctive COACHELLA (stylized) trademark and service mark, having used the mark in connection with the Festival and related goods and services since the first Festival in 1999. The stylized mark is depicted below:



31.     Plaintiff also owns the exclusive trademark rights to the distinctive COACHELLA VALLEY MUSIC AND ARTS FESTIVAL trademark and service mark, having used the mark in connection with the Festival and related goods and services since the first Festival in 1999.

32.     The COACHELLA, COACHELLA (stylized), and COACHELLA VALLEY MUSIC AND ARTS FESTIVAL marks are collectively referred to in this complaint as the "COACHELLA Marks."

33.     Since 1999, Plaintiff's use of the COACHELLA Marks has been extensive, continuous, and substantially exclusive.

34.     Coachella and the COACHELLA Marks have been the subject of extensive newspaper articles, magazine articles, television, and Internet news stories. *See* **Exhibit 1**.

35.     Plaintiff has made, and continues to make, a substantial investment of time, effort and expense in the production and promotion of Coachella and the COACHELLA Marks.

36.     The COACHELLA Marks are unique and distinctive and, as such, designate a single source of origin.

37.     As a result of Plaintiff's efforts and use, the COACHELLA Marks have come to be recognized by the public and members of the trade as being associated exclusively with Plaintiff and the Coachella Valley Music and Arts Festival.

38.     Plaintiff expends substantial effort and expense to protect the COACHELLA Marks' distinctiveness in the marketplace. Plaintiff extensively polices unauthorized use of the COACHELLA Marks and has sent countless cease and desist letters to combat misuse or unauthorized use of the COACHELLA Marks.

39.     Plaintiff has filed numerous domain name complaints to remedy the registration or use of identical or confusingly similar Internet domain names.

40.     Based on Plaintiff's use, including the use described herein, Plaintiff owns extensive common law trademark rights in the COACHELLA Marks.

41.     In addition to their extensive common law rights, Plaintiff owns numerous

United States registrations and applications for the COACHELLA Marks. Specifically, Plaintiff owns:

a.  United States Service Mark Registration No. 3,196,119 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065;

b.  United States Trademark Registration No. 4,270,482 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065;

c.  United States Service Mark Registration No. 3,196,129 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065;

d.  United States Trademark Registration No. 4,266,400 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065;

e.  United States Trademark Registration No. 5,235,905 for COACHELLA. This Registration is incontestable under 15 U.S.C. § 1065

f.  United States Trademark Registration No. 5,235,903 for COACHELLA (stylized). This Registration is incontestable under 15 U.S.C. § 1065;

g.  United States Service Mark Registration No. 3,196,128 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065;

h.  United States Trademark Registration No. 3,965,563 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065; and

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

i.    United States Trademark Registration No. 4,008,651 for COACHELLA VALLEY MUSIC AND ARTS FESTIVAL. This Registration is incontestable under 15 U.S.C. § 1065.

The registration certificates for each of these registrations are attached to this complaint as **Exhibit 5**.

42.    Having been widely promoted to the general public, extensively used in interstate commerce, and having exclusively identified Plaintiff and its goods and services, the COACHELLA Marks symbolize the tremendous goodwill associated with Plaintiff and Plaintiff's Festival.

43.    The COACHELLA Marks are a property right of incalculable value.

44.    Passes to Coachella are revocable licenses.

45.    Except for vehicle passes, each Coachella pass is worn around the wrist by the user. Once installed around the wrist, the wristband is designed not to be removeable, a feature that prevents each pass's transfer from an authorized user to an unauthorized user.

46.    Each Coachella pass plainly states on its faced that the pass is subject to the wristband terms of use ("Terms"), which are accessible at https://www.aegpresents.com/festival-ticket-terms/ and which make clear "Tickets [defined to include tickets, wristbands, passes, permissions, authorizations, and entry methods] evidence a revocable license to enter the Event property. Violation of these Terms of use may result in revocation of the license without prior notice." The Terms, screen captures of which are attached as **Exhibit 6**, expressly prohibit unauthorized commercial use or transfer of Coachella passes, contain a clause that a breach of the Terms will cause irreparable injury to Plaintiff, contain a clause that the passholder consents to injunctive relief to prevent or mitigate that irreparable injury, and contain the following language:

**UNAUTHORIZED TRANSFERS PROHIBITED**

All publicly sold Tickets are for use by the original authorized purchaser and their invited guest(s) only (each an "Authorized Purchaser"),

and are not transferable by the Authorized Purchaser, any of their invited guests, or any other person. **Likewise, all Tickets provided to performing artists, production personnel, vendors, sponsors, and other guests of the Event producer** (each an "Authorized Recipient"), are for use by the Authorized Recipient and his or her invited guest(s) only, and **are not transferable** by the Authorized Recipient, his or her invited guest(s), or any other person. Authorized Purchasers and Authorized Recipients are referred to individually as a "User." Tickets obtained from unauthorized sources may be counterfeit and are worthless.

Except as provided herein, **Tickets may not be sold, transferred, or used for any form of commercial or trade purposes, including but not limited to promotions, contests, commercial or advertising purposes**, housing, hotels, vacation rentals, sweepstakes, charitable giveaways, or other activities **absent the Event producer's prior written consent**. **No sponsorship, on site marketing, sampling, vending, coupon/product distribution, or other promotional activity may be conducted at the Event** (inclusive of parking lots), absent the Event producer's prior written approval in each instance. **Any Tickets used in violation of this provision shall be deemed revoked and void, and their bearers deemed trespassers at the Event.**

**Resale or attempted resale of Tickets is grounds for termination of the license and cancellation of the Ticket.**

\*     \*     \*

**IRREPARABLE INJURY AND CONSENT TO INJUNCTIVE RELIEF**

Any breach of these Terms by the User will cause irreparable injury to Event producer and User consents to injunctive relief to prevent or mitigate any irreparable injury.

Exhibit 6 (emphasis added).

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## **DEFENDANT'S UNLAWFUL CONDUCT**

47.    Defendant purports to be a wellness and functional beverage company and the maker of a beverage it calls Safety Shot, which purportedly "reduc[es] blood alcohol content and boost[s] clarity." [6]

48.    On or about January 3, 2024, Defendant caused to be released a series of press releases or related media concerning Safety Shot. A copy of one such press release is attached as **Exhibit 7**.

49.    As can be seen from Exhibit 7, Defendant—while leading with its stock ticker symbol—falsely claimed "to be [a] highlight of Coachella's opening weekend", falsely claimed to have a brand activation at the Festival, and falsely asserted that Defendant "joins other global beverage brands that have created activations at Coachella including Heineken, Patron, Don Julio, 818 Tequila, Aperol Spritz, and Evian," each of which is or has been a legitimate sponsor of the Coachella festival. *Id*. at 90.

50.    Defendant refers in this press release to their unauthorized event as the "Safety Shot House Coachella experience." *Id*.

51.    Further, while acknowledging that Coachella is "[o]ne of the highest profile events in the music and arts world," Defendant further states that, on January 3, 2024, it "announced its inaugural brand activation with 'Safety Shot House' at the Coachella Valley Music and Arts Festival on April 12 –14, 2024." *Id*. Defendant made this statement even though it is not a sponsor of the Festival and will not be having a "Safety Shot House" on the Coachella festival grounds.

52.    Defendant fully admits that it is targeting Plaintiff's Festival attendees, referring to them in the press release as "an ideal demographic for Safety Shot." *Id*.

53.    Defendant acknowledges that this false association was created to provide a "very high-profile launch for [its] brand." *Id*. In that same release, Defendant bragged about its expected boost in sales "to take off as a global brand," including from this alleged

---

[6] *See* Exhibit 7 at 91.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

"exposure at Coachella" such that "people around the world will be introduced to" Defendant's product, and it did all of this while knowing that its statements concerning any association with Plaintiff or Coachella were patently false. *Id.* at 91.

54.     In truth, Defendant has effectively taken a sponsorship from Plaintiff without paying for it.

55.     This unlawfully acquired sponsorship had the desired effect: on January 9, 2024, an investment publication posted an article stating that people should invest in Defendant, attached as **Exhibit 8**, stating that Defendant's product's "initial introduction events include . . . the Coachella Valley Music and Arts Festival in April." Exhibit 8 at 97.

56.     In addition, the false "news" of the purported launch at Coachella spread like wildfire through press and media outlets. A Google search for "safety shot" and "drink" and "Coachella" currently results in 3,080 hits, as shown in search results attached as **Exhibit 9**. Thus, the consumer confusion and false association resulting from Defendant's knowingly false statements is likely to be widespread and pervasive.

57.     While making patently false statements designed to create a false association with Plaintiff and with the world-famous Festival, Defendant also acknowledges that there are "significant risks and uncertainties affecting" its business plans. *See* Exhibit 7 at 91.

58.     Defendant claims its product reduces blood alcohol content, boosts clarity, accelerates the detoxification process, and provides other benefits; however, Plaintiff is unaware of whether Defendant has obtained FTC or FDA approval to make its various statements or whether there has been any rigorous testing of Defendant's claims concerning the product, including whether it actually performs as claimed and whether it is safe to consume.

59.     Because Defendant has created a false association between its product and Plaintiff's Festival, Plaintiff's reputation and that of the Festival will be damaged to the extent anyone experiences harm from consuming or related to the consumption of Defendant's product or is disappointed with the quality or effectiveness of the product.

60.     Moreover, Defendant's blatant false association with Plaintiff's Festival appears to be intended to increase interest from investors and manipulate the value of its stock, and Plaintiff's reputation and that of the Festival will therefore be further damaged to the extent that Defendant's business practices result in negative publicity or investor losses.

61.     In addition, as part of the unauthorized sponsorship, Defendant made plain in one of its press releases that it "will have a giveaway for consumers to win a chance to attend this extraordinary event during Coachella's opening weekend." Exhibit 7 at 91. Accordingly, on information and belief, Defendant is planning to host an unauthorized promotional event, and may attempt to transfer Coachella wristbands without Plaintiff's consent and in express violation of the wristbands' Terms.

62.     By using a false and unauthorized endorsement to offer promotional Coachella passes, Defendant has caused members of the public to be confused or deceived into believing that Plaintiff authorized Defendant to engage in such conduct when in fact Plaintiff has not. The false and misleading representations that Defendant has made, and continues to make, in connection with this unauthorized commercial exploitation misrepresents the qualities of the goods Defendant is offering—purportedly valid Coachella festival passes that are in fact invalid upon transfer, or valid for an entirely different event and location.

63.     Plaintiff has contacted Defendant and demanded that Defendant cancel its "Safety Shot House Coachella experience" and retract all press releases and media concerning the unauthorized event and return any passes used for promotional purposes for a refund.

64.     While Defendant has acknowledged that it would not seek to host its event on Coachella's festival grounds—an act that would constitute trespassing—and acknowledged that it will not use Plaintiff's intellectual property in the future, Defendant asserts that it cannot take down the prior press releases and may proceed with an event in the vicinity of the Coachella festival, despite Plaintiff's demands and the fact that the

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

event's branding is now inextricably tied to the Festival's branding.

## HARM TO PLAINTIFF AND THE GENERAL PUBLIC

65.     Defendant's unauthorized use of the COACHELLA Marks and unauthorized association with Plaintiff and the Coachella festival creates a likelihood of confusion as to source, sponsorship, affiliation, and/or endorsement of Defendant and its goods and services and is likely to suggest a sponsorship, license, or association of Defendant with Plaintiff, despite the fact that no such relationship exists.

66.     Defendant's activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and the COACHELLA Marks, particularly the goodwill and reputation associated therewith.

67.     Defendant's activities have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public, who has an inherent interest in being free from confusion, mistake, and deception.

## FIRST CAUSE OF ACTION

### (Trademark Infringement Under 15 U.S.C. § 1114)

68.     Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

69.     Defendant's use of the federally registered COACHELLA Marks is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendant's goods or services are authorized by, sponsored by, approved by, or affiliated with Plaintiff.

70.     The above-described acts of Defendant constitute trademark infringement in violation of 15 U.S.C. § 1114(1), entitling Plaintiff to relief.

71.     Defendant has unfairly profited from the trademark infringement alleged, and Plaintiff is entitled to a disgorgement of Defendant's profits (if any) pursuant to 15 U.S.C. § 1117.

72.     By reason of Defendant's acts of trademark infringement, Plaintiff has suffered damage to the goodwill associated with the COACHELLA Marks, in amounts to be determined.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

73.     Defendant's acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and its federally registered trademarks.

74.     Defendant's acts of trademark infringement have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

75.     By reason of Defendant's acts and continued recalcitrant behavior, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

76.     By reason of Defendant's willful and repeated acts of trademark infringement and its recalcitrant behavior, Plaintiff is entitled to damages, and it is entitled to have those damages trebled under 15 U.S.C. § 1117.

77.     This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (Trademark Infringement and False Designation of Origin Under
### 15 U.S.C. § 1125(a))

78.     Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

79.     Defendant's use of the COACHELLA Marks is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendant's goods or services are authorized by, sponsored by, approved by, or affiliated with Plaintiff.

80.     The above-described acts of Defendant constitute trademark infringement and false designation of origin in violation of 15 U.S.C. § 1125(a), entitling Plaintiff to relief.

81.     Defendant has unfairly profited from the trademark infringement alleged, and Plaintiff is entitled to a disgorgement of Defendant's profits (if any) pursuant to 15 U.S.C. § 1117.

82.   By reason of Defendant's acts of trademark infringement and false designation of origin, Plaintiff has suffered damage to the goodwill associated with the COACHELLA Marks, in amounts to be determined.

83.   Defendant's acts of trademark infringement and false designation of origin have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and its COACHELLA Marks.

84.   Defendant's acts of trademark infringement and false designation of origin have irreparably harmed, and if not enjoined, will continue to irreparably harm the general public which has an interest in being free from confusion, mistake, and deception.

85.   By reason of Defendant's acts and continued recalcitrant behavior, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to entry of a temporary restraining order against Defendant and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

86.   The above-described acts of Defendant were willful and repeated.

87.   By reason of Defendant's willful and repeated acts of trademark infringement and its recalcitrant behavior, Plaintiff is entitled to damages, and it is entitled to have those damages trebled under 15 U.S.C. § 1117.

88.   This is an exceptional case making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION

### (False Advertising Under 15 U.S.C. § 1125(a))

89.   Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

90.   Defendant has made false and/or misleading advertisements.

91.   The advertisements deceived and/or had the capability to deceive consumers.

92.   The deception has had a material effect on purchasing decisions, whether that be for Defendant's product or Defendant's stock or otherwise.

93.   The misrepresented products and services affected interstate commerce.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

94.    Plaintiff has been injured by the false advertising in an amount according to proof, including Plaintiff's actual damages, the costs of corrective advertising, Defendant's profits, and the costs of this action.

95.    This is an exceptional case where Defendant's conduct was willful and deliberate.

96.    Plaintiff is entitled to injunctive relief under 15 U.S.C. § 1116.

97.    Plaintiff is entitled to have its recovery trebled under 15 U.S.C. § 1117.

98.    Plaintiff is entitled to an award of its attorneys' fees under 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

### (Unfair or Deceptive Acts or Practices in Violation of Cal. Bus. & Prof. Code §§ 17200 & 17500 and California Common Law)

99.    Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

100.    Plaintiff is informed and believe that Defendant is in direct competition with Plaintiff.

101.    Defendant's willful, knowing, and unauthorized promotion, advertisement, sale and offering for sale of infringing goods/services causing confusion as to the source of the services (including the "Safety Shot House" and all statements associating that event with Plaintiff and Coachella) and causing harm to Plaintiff's goodwill is an unlawful appropriation of Plaintiff's exclusive rights in the COACHELLA Marks.

102.    Members of the public are likely to be confused and deceived into believing that they will obtain valid passes to Coachella festival passes from Defendant.

103.    Defendant's conduct in offering to transfer and/or transferring Coachella festival passes without Plaintiff's consent constitutes an inducement of the recipients to commit a trespass, and a breach of the wristband terms of use.

104.    At all relevant times, Defendant has been aware that Coachella is a private event, that Plaintiff does not permit the resale or transfer of passes to these private events, and that pass holders who obtained their passes from Defendant will possess void passes

and are subject to eviction from the relevant festival as trespassers. Nevertheless, Defendant has offered to transfer and/or has transferred such passes.

105.    Members of the public are likely to be confused and deceived into believing the passes they win or otherwise obtain from Defendant are genuine and that, if they win or otherwise obtain Coachella passes from Defendant, they will be welcome at the Festival.

106.    Defendant's conduct as described herein constitutes unfair competition, including unfair or fraudulent business acts or practices and misleading advertising, in violation of California Business and Professions Code §§ 17200 and 17500, and under the common law of the State of California.

107.    Pursuant to California Business and Professions Code § 17203, Defendant is required to disgorge and restore to Plaintiff all profits and property acquired by means of Defendant's unfair competition with Plaintiff.

108.    Due to Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable harm. It would be difficult to ascertain the amount of money damages that would afford Plaintiff adequate relief at law for Defendant's acts and continuing acts. Plaintiff's remedy at law is not adequate to compensate it for the injuries already inflicted and further threatened by Defendant. Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to California Business and Professions Code § 17203.

109.    Defendant's conduct has been intentional and willful and in conscious disregard of Plaintiff's rights and, therefore, Plaintiff is entitled to exemplary or punitive damages under the statutory and common law of the State of California in an amount appropriate to punish Defendant and to make it an example of the community.

### FIFTH CAUSE OF ACTION

### (Inducement of Trespass)

110.    Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

111.    Plaintiff and its affiliates have obtained the rights to the Empire Polo Club for the 2024 Coachella festival and have and will have the right to the exclusive possession of

such venue during the days and times of the Coachella festival.

112. Permission to enter the Coachella festival, including its related areas, is restricted to Plaintiff's invitees and other specified individuals.

113. Members of the public who receive Coachella festival passes in violation of the restriction on transfer will be trespassers, as will Defendant for causing the trespass.

114. By enabling members of the public to attend Coachella through improperly acquired credentials, Defendant has intentionally and wrongfully intruded, and will continue to intrude, into a private event or inducement thereof.

115. Defendant's conduct as described constitutes an inducement of trespass by those members of the public who acquire Coachella festival passes from Defendant.

116. Plaintiff has suffered, and will continue to suffer, damage resulting from Defendant's unjustified and wrongful conduct. Such damage includes the trespass into the Coachella festival by people who are not authorized pass holders and harm to Plaintiff's goodwill and reputation caused by the negative publicity associated with the need to exclude and eject unauthorized pass holders from entering the private event. Such damage is incalculable and irreparable. Plaintiff is, therefore, entitled to preliminary and permanent injunctive relief.

## SIXTH CAUSE OF ACTION

### (Conversion)

117. Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this Complaint as though fully set forth here.

118. Plaintiff owns all sponsorship rights in Coachella.

119. Defendant substantially interfered with Plaintiff's property by knowingly or intentionally taking possession of a Coachella sponsorship without Plaintiff's consent.

120. By its acts, Defendant has obtained a Coachella sponsorship that Plaintiff cannot clawback and may have damaged or destroyed Plaintiff's sponsorship deals with legitimate Coachella beverage sponsors.

121. Plaintiff has been harmed in an amount according to proof constituting the

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

fair market value of the affected sponsorships.

122.   Defendant's conduct as described herein was substantial factor in causing Plaintiff's harm.

123.   Plaintiff is entitled to the fair market value of the property that is the subject of Defendant's conversion.

## SEVENTH CAUSE OF ACTION

### (Trespass to Chattels)

124.   Plaintiff realleges and incorporates by reference each of the allegations contained in all preceding paragraphs of this complaint as though fully set forth here.

125.   Plaintiff owns all sponsorship rights in Coachella.

126.   Defendant substantially interfered with Plaintiff's use or possession of Plaintiff's property by knowingly or intentionally taking possession of a Coachella sponsorship without Plaintiff's consent.

127.   By its acts, Defendant may have damaged or destroyed Plaintiff's sponsorship deals with legitimate (and potential) Coachella beverage sponsors, and Defendant's unauthorized actions have trespassed upon and adversely impacted Plaintiff's exclusive right to engage in discussions and curate its own choice of sponsorship partners.

128.   Plaintiff has been harmed in an amount according to proof constituting the fair market value of the affected sponsorships.

129.   Defendant's conduct as described herein was substantial factor in causing Plaintiff's harm.

130.   Plaintiff is entitled to the fair market value of the property that is the subject of Defendant's trespass.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1.   That the Court enter a judgment against Defendant that Defendant has:

a.   Infringed the rights of Plaintiff in the COACHELLA Marks, which have been federally registered, in violation of 15 U.S.C. § 1114(1);

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

b. Infringed the rights of Plaintiff in the COACHELLA Marks in violation of 15 U.S.C. § 1125(a);

c. Created as false association with Plaintiff and the COACHELLA Marks;

d. Engaged in false or misleading descriptions and representations of fact constituting false advertising in violation of 15. U.S.C. § 1125(a);

e. Engaged in conversion and trespass to chattels with respect to obtaining a Coachella beverage sponsorship and damaging or destroying the value of Plaintiff's sponsorships with others;

f. Induced trespass in violation of California common law;

g. Engaged in unfair competition in violation of California Business and Professions Code §§ 17200, *et seq.* and California common law; and

h. Engaged in untrue or misleading advertising in violation of California Business and Professions Code §§ 17500, *et seq.* and California common law.

2. That each of the above acts was willful.

3. That the Court issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendant and its agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

a. Engaging in any activity that infringes Plaintiff's trademark rights, including advertising, promoting, marketing, selling and offering for sale any goods or services in connection the COACHELLA Marks or any confusingly similar mark, including conducting a promotional event such as the one currently titled "Safety Shot House" within 100 miles of Coachella or within five days before or after Coachella begins or ends;

b. Offering or attempting to offer to buy, sell, trade, or transfer or soliciting the purchase, sale, trade, or transfer of any pass or any other thing entitling access to any part of the Coachella festival;

c. Participating in, aiding, or inducing, or attempting to participate in, aid, or induce, any effort by any person to trespass or gain unauthorized entry into any part of the Coachella festival;

d. Advertising or publishing any offer to give away, award, or in any way transfer passes or any other thing entitling access to any part of the Coachella festival;

e. Making any false or misleading statements regarding Coachella, including those that would create any association with Defendant or imply any kind of endorsement or sponsorship (or lack thereof);

f. Receiving any compensation, whether in money, in kind, or otherwise, for any of the acts proscribed in subparagraphs (a)-(e) above;

g. Engaging in any unfair competition with Plaintiff; and

h. Engaging in any deceptive acts, including untrue, false, or misleading advertising.

4. Requiring Defendant, its agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, to: (a) inform any recipients of Festival passes from Defendant or its agents, that the use, transfer, or sale of such passes is unlawful, automatically renders the passes void, and subjects the pass holders to ejection from the Coachella Festival as trespassers; and (b) provide to Plaintiff sufficient information to cancel and refund all Coachella passes given away or intended to be given away or otherwise transferred by Defendant.

5. That Plaintiff be awarded damages for Defendant's trademark infringement, false designation of origin, false advertising, and unfair competition and that these damages be trebled due to Defendant's willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

6. That Plaintiff be awarded all profits resulting from Defendant's infringement of Plaintiff's rights and by means of Defendant's false advertising and unfair competition with Plaintiff.

7.    That Plaintiff be awarded the costs of any corrective advertising it undertakes to dispel any confusion or false association created by Defendant's unlawful acts.

8.    That Plaintiff be awarded the value of a Coachella beverage sponsorship.

9.    That Plaintiff be compensated for any diminished value of any existing Coachella sponsorship whose value was diminished or damaged by Defendant's acts;

10.    That Defendant be ordered to account for and disgorge to Plaintiff all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions.

11.    That Plaintiff be awarded exemplary and/or punitive damages by reason of Defendant's unlawful actions.

12.    For pre- and post-judgment interest on all damages.

13.    That the Court award Plaintiff its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117, California law, and any other applicable provision of law.

14.    That the Court award Plaintiff its costs of suit incurred herein.

15.    For such other or further relief as the Court may deem just and proper.


DATED: January 19, 2024                   Tucker Ellis LLP


By:    /s/Steven E. Lauridsen
       Steven E. Lauridsen
       David J. Steele
       Howard A. Kroll
       Dina Roumiantseva

       *Attorneys for Plaintiff,*
       *Coachella Music Festival, LLC*

# DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

DATED: January 19, 2024                    Tucker Ellis LLP

By:    /s/Steven E. Lauriden
       Steven E. Lauridsen
       David J. Steele
       Howard A. Kroll
       Dina Roumiantseva

       *Attorneys for Plaintiff,*
       *Coachella Music Festival, LLC*